UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JULIAN LEIGH EDWARDS, #504232,

                 Petitioner,

v.                                CASE NO.  2:13-CV-10220
                                HONORABLE VICTORIA A. ROBERTS

JEFFREY WOODS,

                 Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I.     **Introduction**

       This is a habeas case under 28 U.S.C. § 2254.  Michigan prisoner Julian Leigh Edwards

("Petitioner") was convicted of first-degree murder, assault with intent to commit murder, felon in

possession of a firearm, and possession of a firearm during the commission of a felony following

a jury trial in the Wayne County Circuit Court.  He was sentenced to life in prison without parole

on the murder conviction, a concurrent term of 15 to 60 years in prison on the assault conviction,

time served on the felon in possession conviction, and a consecutive term of two years in prison on

the felony firearm conviction in 2010.  In his *pro se* pleadings, Petitioner raises claims concerning

the jury instructions, the sufficiency of the evidence, the admission of alleged hearsay and trial

counsel's failure to object, and the effectiveness of trial counsel as to a plea offer.  For the reasons

set forth, the Court denies habeas relief.  The Court also denies a certificate of appealability and

denies Petitioner leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a a shooting incident at an apartment in Detroit, Michigan on May 28, 2009. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from the shooting death of Antoine Brown and gunshot injuries suffered by Babe Franklin that occurred on May 28, 2009. On that date, defendant was living in a one-bedroom apartment with his girlfriend, Jenae Willis, who had a young daughter fathered by Brown during a prior relationship. Franklin testified that Brown had been informed by Willis's sister that defendant was allegedly abusing Brown's child and that Child Protective Services (CPS) had become involved in the matter. Brown communicated this information to Franklin, and Brown indicated that he wanted to talk to defendant. In numerous phone calls between Willis and Brown on the day of the shootings, Willis told Brown that the accusations of child abuse made against defendant were fabrications. As reflected in the testimony by Willis and Franklin, Brown initially did not know Willis's address, and he kept calling Willis demanding the address. Eventually, Willis's sister gave Brown the address, and Brown asked Franklin to accompany him to the apartment. Franklin claimed that he suggested to Brown that, if defendant was present at the apartment, they simply talk to defendant to discover the truth before doing anything rash. Brown was described by police as being a heavyset man, weighing between 270 and 300 pounds.

> At around 9:00 p.m. on May 28, 2009, defendant returned to his apartment with his brother Christopher Edwards (hereafter Edwards) after the two had spent the afternoon together. Edwards indicated that defendant was acting normal and did not appear upset about anything. Willis and her friend Ashley Scott were at the apartment when the brothers arrived, and about five to ten minutes later there were loud knocks on the door. According to Edwards, defendant opened the door just slightly after first peering through the peephole, at which point Brown or Franklin shoved the door wide open and they both barged into the apartment. Edwards testified that defendant was not carrying any weapons when he answered the door, nor did Edwards have knowledge of any weapons being kept in the apartment. Willis testified that she kept a 20–gauge shotgun behind her bedroom door, which belonged to her. Edwards claimed that, upon gaining entry to the apartment, Franklin and Brown physically attacked defendant and that the tussle carried into the apartment's sole bedroom. Edwards did not observe Franklin or Brown carrying any weapons, and Edwards, fearing for his own life, immediately left the apartment. On fleeing, Edwards heard gunshots coming from the apartment building, and he called 911 out of concern for defendant. Edwards never witnessed the shootings inside the

apartment. Willis also testified that she did not witness the shootings. She had been in the bedroom sleeping at the time that Franklin and Brown burst into the apartment. Defendant and Franklin came running into the bedroom and were fighting, and Willis immediately got up and locked herself in a bathroom. In a statement to police, Willis indicated that she heard defendant exclaim, "I told you all not to come up in here." At trial, she denied that defendant made the statement. Willis testified that she had not informed defendant about the phone calls between her and Brown. Willis claimed that she did not observe anyone carrying a weapon that evening, and she denied that defendant kept any weapons in the apartment.

Defendant did not testify at trial and the only eyewitness testimony concerning the actual shootings came from Franklin, the surviving victim. Franklin testified that when he and Brown arrived at defendant's apartment complex, another man was leaving the complex, which allowed them to make entry without "buzzing" in. Franklin stated that he and Brown were not carrying any weapons, as they only wanted to speak to defendant; Brown was calm and not irate. Once they reached defendant's and Willis's apartment unit, Brown stood behind Franklin as Franklin knocked on the door. When defendant started to open the door, Franklin asked for Willis and defendant asked "who the f* * * are you?" Brown and Franklin then entered the apartment. According to Franklin, defendant proceeded to run toward the bedroom, carrying a shotgun. Franklin had testified at the preliminary examination that he noticed defendant carrying the shotgun when defendant first opened the apartment door. Brown chased defendant into the bedroom and Franklin followed close behind. Upon entering the bedroom, Franklin observed Brown and defendant wrestling over control of the shotgun that defendant had been carrying. Defendant's hands were on the trigger and the barrel of the gun, while Brown's hands were grasping the middle of the shotgun. Just moments after Franklin entered the bedroom, the shotgun discharged, striking Franklin in the left hand and chest. Franklin fell to the floor and then heard the shotgun discharge again, followed by a yell from Brown. Franklin saw defendant push Brown to the floor, and then defendant proceeded to leave the bedroom. Brown had been shot but was still alive.

Defendant, however, soon reentered the bedroom, pointed the shotgun at Brown, and then shot him for the second time. According to Franklin, defendant pulled the trigger again while pointing the gun at Brown, but the gun just clicked and did not fire. Defendant then turned the shotgun on Franklin and pulled the trigger, but the gun did not fire. Defendant instead struck Franklin a couple of times with the barrel of the gun. Franklin was able to stand up, and he started running toward the front door of the apartment. Franklin, however, was then shot in the back with what he believed was a handgun based on the sound of the weapon. He slumped against a wall in the living room and ended up on the ground next to a closet. Franklin observed defendant return to the bedroom, and he then heard the handgun being fired. The forensic pathologist who conducted Brown's autopsy testified that Brown had been shot three times—a shotgun wound to the chest, a shotgun wound to the

abdomen, and a handgun wound to the right flank. Franklin testified that defendant then came out of the bedroom and began pacing around the apartment and ranting. Franklin heard defendant yell, "I told you. I told you on the phone if you came over here I was killing somebody." Defendant then made a phone call, telling the person on the other end of the line, "I just shot these two n* * * * *s. Get over here." Franklin testified that defendant proceeded to leave the premises, taking a handgun with him but not a shotgun. Franklin then called 911. He had to step outside the apartment in order to identify the address for the 911 operator, at which point the police had already arrived in light of Edwards' earlier 911 call.

Willis testified that she came out of the bathroom when the gunshots ended, and she saw defendant in the hallway and a man lying in the living room bleeding from the chest. Willis told police in a statement that she observed defendant holding a shotgun after she emerged from the bathroom, but at trial she denied ever seeing defendant holding a gun. Franklin testified that he saw Willis leave the apartment and that he believed that Willis should have recognized Franklin, given that they had met numerous times in the past. Willis had denied recognizing Franklin in the apartment.

The police discovered Brown in a hallway in the apartment, bleeding from his chest but still alive. No weapons were found on Brown, who later perished after being taken by EMS to the hospital. Police testimony indicated that there was blood everywhere in the apartment and that the place looked like a scuffle had occurred. The police did not find any weapons on Franklin, and he informed police that he had been shot by "Moochie," which was defendant's nickname.

Nearly three months after the shooting, the police pulled over a car driven by defendant. He was placed into custody for not having a license, and the police later discovered that there was an outstanding homicide warrant for defendant's arrest. Defendant gave police several incorrect names.

At trial, the jury, as to the issue of homicide, was instructed on the offenses of first-degree and second-degree murder, but the court declined the prosecutor's request for a manslaughter instruction. The trial court opined that a voluntary manslaughter instruction would be so similar to the second-degree murder instruction that it would cause juror confusion. The jury was instructed on self-defense, as requested by defendant.

*People v. Edwards*, No. 296127, 2011 WL 1446074, *1-3 (Mich. Ct. App. April 14, 2011)

(unpublished) (footnotes omitted).

Following his convictions and sentencing, Petitioner filed an appeal of right with the

Michigan Court of Appeals raising claims concerning the jury instructions, the admission of alleged

hearsay, and trial counsel's failure to object to that alleged hearsay. The court denied relief on those claims and affirmed Petitioner's convictions. *Id.* at *3-8. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Edwards*, 490 Mich. 874, 803 N.W.2d 338 (2011).

Petitioner then filed an initial Habeas Petition with this Court raising the same claims presented on direct appeal, as well as additional claims concerning the sufficiency of the evidence and ineffective assistance of trial counsel relative to a plea offer. The Court determined that the new claims were unexhausted and stayed and administratively closed the case so that Petitioner could return to the state courts and fully exhaust his remedies.

Petitioner returned to the state trial court and filed a motion for relief from judgment raising his unexhausted claims. The trial court denied relief in part based upon Michigan Court Rule 6.508(D)(2) and on the merits. *People v. Edwards*, No. 90-21356 (Wayne Co. Cir. Ct. Jan. 7, 2014). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The Michigan Court of Appeals denied relief pursuant to Michigan Court Rule 6.508(D)(3) because Petitioner alleged grounds for relief which could have been raised on direct appeal and failed to establish good cause for failing to previously raise the issues. *People v. Edwards*, No. 321132 (Mich. Ct. App. May 6, 2014). Petitioner then filed an application for leave to appeal which the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. Edwards*, 497 Mich. 981, 861 N.W.2d 26 (2015).

Petitioner thereafter moved to reopen this case and proceed on his habeas claims. The court granted his request and reopened this case. Respondent filed an Answer to the Habeas Petition

contending that it should be denied because the claims are procedurally defaulted and/or lack merit. Petitioner filed a Reply to that Answer.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due

respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488,

493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Discussion

### A.    Jury Instruction Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to instruct the jury on the lesser offense of voluntary manslaughter. Respondent contends that this claim is waived, procedurally defaulted, and lacks merit.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner waived the claim by consenting to the instructions as given and not expressing agreement when the prosecution requested a manslaughter instruction (which the trial court denied). The court further determined that even if an error occurred, it was harmless because the jury convicted Petitioner of first-degree murder and rejected a verdict on the lesser offense of second-degree murder. *Edwards*, 2011 WL 1446074 at *3-5.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v.*

*Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on this claim, the court relied upon a state procedural bar – Petitioner's agreement to the jury instructions as given – which the court found to constitute a waiver of this issue. *Edwards*, 2011 WL 1446074 at *4-5. The failure to make a contemporaneous objection or request is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied relief based on Petitioner's acceptance of the jury instructions, *i.e.,* his failure to object at

trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Nonetheless, the Court notes that Petitioner cannot establish prejudice (or that he is otherwise entitled to habeas relief on the merits of this claim) because, as explained by the Michigan Court of Appeals, any error in failing to instruct the jury on manslaughter was harmless error given that the jury convicted him of first-degree murder and rejected the lesser verdict of second-degree murder. *See Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005) (jury's decision to convict the petitioner of first-degree felony murder even though the jury was also instructed on the lesser-included offense of second-degree murder "strongly suggests" that the trial court's failure to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter was at most harmless error). In other words, because the jury chose first-degree murder over second-degree murder and rejected Petitioner's defense, there is no basis to believe that it would have opted for the lesser offense of voluntary manslaughter over first-degree murder. The failure to instruct on voluntary manslaughter thus did not have had a "substantial and injurious effect or

influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). This jury instruction claim lacks merit.

Petitioner also fails to establish that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner makes no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

### B.      Sufficiency of the Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of malice to support his first-degree murder conviction. Respondent contends that this claim is barred by procedural default and that it lacks merit.

As noted, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524 ; *see also Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. The last explained state court judgment should be used to make this determination. *Ylst*, 501

U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Petitioner first presented this claim in his motion for relief from judgment on state collateral review. The Michigan Supreme Court, the last state court to rule on the matter, denied leave to appeal pursuant to Michigan Court Rule 6.508(D). That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the lower court's decision to determine the basis for the denial of state post-conviction relief.

The Michigan Court of Appeals denied relief on this claim on procedural grounds by finding that Petitioner could have raised the claim on direct appeal and that he failed to establish good cause under Michigan Court Rule 6.508(D)(3) for his failure to do so. *Edwards*, No. 321132 at *1. The state court thus clearly relied upon a procedural default to deny Petitioner relief on this claim. Accordingly, this claim is procedurally defaulted.

Again, as discussed, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual

prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85. Petitioner neither alleges nor establishes cause to excuse this procedural default. Consequently, this Court need not address the issue of prejudice on habeas review. *Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289.

The Court further finds, however, that Petitioner cannot establish actual prejudice as this claim lacks merit. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); MICH. COMP. LAWS § 750.316. Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999). Some time span between the initial homicidal intent and the ultimate killing is necessary to establish premeditation and deliberation, *People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159 (2003), but the time required need only be long enough "to allow the defendant to take a second look." *Schollaert*, 194 Mich. App. at 170. An interval of a few seconds can be sufficient to create a jury question on the issue of premeditation. *People v. Tilley*, 405 Mich. 38, 45, 273 N.W.2d 471 (1979). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 198 Mich. App. 123, 128, 497 N.W.2d 202 (1993). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Under Michigan law, "[t]he degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Tierney*, 266 Mich. App. 687, 714-15, 703 N.W.2d 204 (2005). For provocation to be adequate, it must be "that which would cause a reasonable person to lose control." *Id*. at 715. Words alone are generally inadequate provocation. *People v Pouncey*, 437 Mich. 382, 391, 471 N.W.2d 346 (1991). Additionally, if a defendant had a sufficient "cooling-off period," he cannot

demonstrate the necessary "heat of passion" to mitigate murder to manslaughter. *Id.* at 392 (30 seconds was a sufficient cooling-off period).

Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

In this case, the prosecution presented sufficient evidence to support Petitioner's first-degree murder conviction. The evidence at trial indicated that Petitioner and the deceased victim, Brown, had a dispute over Petitioner's treatment of Brown's child. Brown and the surviving victim, Franklin, went to Petitioner's apartment to discuss the matter. Franklin's testimony indicated that Petitioner answered the door armed with a shotgun. When Brown and Franklin pushed their way into the apartment, Petitioner ran into the bedroom chased by Brown and followed by Franklin. Petitioner and Brown struggled over the shotgun. During the struggle, Petitioner fired the gun striking Franklin in the hand and chest and then striking Brown. Petitioner then left the bedroom, returned, and unsuccessfully attempted to shoot Franklin and Brown again with the shotgun. Petitioner struck Franklin with the butt of the gun. Franklin stood up and began to flee, but was shot in the back with what sounded like a handgun. Franklin saw Petitioner return to the bedroom and heard another handgun shot. Medical testimony confirmed that Brown had been shot twice with a shotgun and once with a handgun and that he died from those wounds.

Franklin's testimony, and reasonable inferences therefrom, provided sufficient evidence of Petitioner's intent to kill, as well as premeditation and deliberation, and showed that, at a minimum,

Petitioner had sufficient time between the initial shootings with the shotgun during the struggle and the secondary shootings with the handgun to "cool off," take a second look, and consider his actions. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).

Petitioner challenges the inferences the jury drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict was reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed first-degree murder. This claim lacks merit.

Additionally, as discussed, Petitioner fails to establish that a fundamental miscarriage of justice occurred as he fails to present new reliable evidence of his actual innocence. *Bousley*, 523 U.S. at 624; *Schlup*, 513 U.S. at 324-27. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

### C. Admission of Alleged Hearsay/Effectiveness of Trial Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting alleged hearsay testimony and because trial counsel was ineffective for failing to object to the admission of that testimony. Respondent contends that the hearsay claim is waived and/or procedurally defaulted and that both claims lack merit.

As noted, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524 ; *see also Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. The last explained state court judgment should be used to make this determination. *Ylst*, 501 U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

In this case, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on the hearsay claim, the court relied upon a state procedural bar – the failure to object at trial. *Edwards*, 2011 WL 1446074 at *6.[1] As discussed, the failure to make a contemporaneous objection or request is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Carines*, 460 Mich. at 763; *Stanaway*, 446 Mich. at 687; *see also Coleman*, 501 U.S. at 750-51. A state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki*, 869 F.2d at 285. Plain error review does not constitute a waiver of state procedural default rules. *Girts*, 501 F.3d at 755; *Hinkle*, 271 F.3d at 244; *Seymour*, 224 F.3d at 557. Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee*, 929 F.2d at 267. In this case, the Michigan Court of Appeals denied relief based on Petitioner's failure to object to the alleged hearsay testimony at trial.

---

[1]The court also noted that the issue could be seen as waived because trial counsel "spent considerable time" cross-examining Franklin on the matter to elicit that Brown was angry with Petitioner. *Id.* at n. 6.

Again, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley*, 87 F.3d at 784-85. Petitioner alleges that trial counsel was ineffective for failing to object to the alleged hearsay. Petitioner, however, cannot establish that counsel erred or that he was prejudiced by counsel's conduct so as to establish cause, nor can he establish actual prejudice, because the underlying hearsay claim lacks merit.

Petitioner asserts that the trial court violated state law evidentiary rules, his confrontation rights, and his due process rights by admitting Franklin's testimony relaying Brown's concerns about Petitioner's alleged abuse of Brown's child. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Thus, to the extent that Petitioner contests the state court's decision under the Michigan

Rules of Evidence and its interpretation of state law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68. Petitioner fails to state a claim upon which relief may be granted as to any state law issue.

Petitioner also fails to establish a due process violation. The admission of the disputed testimony did not render his trial fundamentally unfair. First, the statements were not hearsay under Michigan Rule of Evidence 801(c) given that they were not offered for the truth of the matter asserted (that Petitioner abused Brown's child). Rather, they were used to explain why Brown and Franklin went to Petitioner's apartment. Second, the statements were relevant, admissible, and not unduly prejudicial under Michigan Rules of Evidence 401, 402, and 403 to provide the jury with a complete picture of what led to the confrontation between Petitioner and the victims and to provide a context for the shootings. The admission of the evidence was thus appropriate under state law and did not deprive Petitioner of a fundamentally fair trial.

Lastly, Petitioner fails to establish a violation of his confrontation rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *Maryland v. Craig*, 497 U.S.

836, 847-48 (1990).  In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.  Testimonial statements include grand jury testimony, preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations.  *Id.* at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy.  *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005).  The Confrontation Clause is not implicated, and thus need not be considered, when non-testimonial hearsay is at issue.  *Davis v. Washington*, 547 U.S. 813, 823-26 (2006); *Desai v. Booker*, 538 F.3d 424, 425-26 (6th Cir. 2008); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and therefore permits their admission even if they lack indicia of reliability"). Such is the case here.  Brown's statements to Franklin were non-testimonial such that the Confrontation Clause is not implicated.  Accordingly, Petitioner's hearsay claim lacks merit.

Additionally, as discussed, Petitioner fails to establish that a fundamental miscarriage of justice occurred as he fails to present new reliable evidence of his actual innocence.  *Bousley*, 523 U.S. at 624; *Schlup*, 513 U.S. at 324-27.  Petitioner's hearsay claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

Petitioner also raises an independent claim that trial counsel was ineffective for failing to object to the admission of the alleged hearsay testimony at trial.  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-

prong test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim because the underlying claim lacks merit. The court further explained that counsel's decision not to object and to instead use the testimony to support Petitioner's self-defense claim was reasonable trial strategy and that Petitioner failed to show that he was prejudiced by counsel's conduct. *Edwards*, 2011 WL 1446074 at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's determination, as well as this Court's ruling, that the underlying hearsay claim lacks merit, Petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Moreover, the Court agrees with the Michigan Court of Appeals that trial counsel's conduct was reasonable because the disputed testimony supported Petitioner's self-defense claim and its admission did not unduly prejudice the defense or affect the outcome at trial. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### D.      Effectiveness of Trial Counsel as to Plea Offer

Lastly, Petitioner asserts that trial counsel was ineffective for advising him to reject a plea

offer for voluntary manslaughter with a sentence of 10 to 20 years plus two years in prison. He alleges that counsel did not understand the law of self-defense and advised him that she could beat the prosecution's case. Respondent contends that this claim is barred by procedural default and that it lacks merit.

Again, as noted, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524 ; *see also Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. The last explained state court judgment should be used to make this determination. *Ylst*, 501 U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Petitioner first presented this claim in his motion for relief from judgment on state collateral review. The Michigan Supreme Court, the last state court to rule on the matter, denied leave to appeal pursuant to Michigan Court Rule 6.508(D). That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. MICH. CT. R. 6.508(D)(3). The form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *Guilmette*, 624 F.3d at 291-92. Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme

Court to the lower court's decision to determine the basis for the denial of state post-conviction relief.

The Michigan Court of Appeals denied relief on this claim on procedural grounds by finding that Petitioner could have raised the claim on direct appeal and that he failed to establish good cause under Michigan Court Rule 6.508(D)(3) for his failure to do so. *Edwards*, No. 321132 at *1. The state court thus clearly relied upon a procedural default to deny Petitioner relief on this claim. Accordingly, this claim is procedurally defaulted.

Again, as discussed, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85. Petitioner neither alleges nor establishes cause to excuse this procedural default. Consequently, this Court need not address the issue of prejudice on habeas review. *Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289.

The Court nonetheless finds that Petitioner cannot establish actual prejudice as this claim lacks merit. As previously discussed, in *Strickland v. Washington*, the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must show that counsel's performance was deficient. Second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The *Strickland* standard applies to plea negotiations, including claims involving counsel's advice about a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012).

In this case, the record belies Petitioner's claim that trial counsel advised him to reject the plea offer. Petitioner first raised this issue in a letter to the trial court after trial but before

sentencing.  1/5/10 Sent. Tr., p. 3.  At the sentencing hearing, defense counsel explained that the prosecutor initially offered Petitioner a plea bargain which would have resulted in a (minimum) sentence of 16 years plus two years in prison, which Petitioner rejected.  *Id*. at p. 5.  Trial counsel continued to negotiate with the prosecutor.  The prosecutor ultimately made a final plea offer on the day of trial which reduced the first-degree murder charge to voluntary manslaughter with a sentence of 10 to 15 years plus two years in prison and reduced the assault with intent to commit murder charge to assault with intent to do great bodily harm.  *Id*. at 6.  Petitioner obviously did not accept the plea offer.  Trial counsel denied ever promising Petitioner that she would beat his case.  *Id*. at 13.  During the discussion at the sentencing hearing, the court essentially determined that Petitioner's claim that counsel coerced him into rejecting the plea and going to trial was false.  The court stated in relevant part:

> And I don't know why this is, but we have been able to hear, even today -- I don't know what goes on with you guys back there in the bullpen, but we were able to hear during the trial, counsel, the day of trial, talking with him and trying to get a plea. So, you know, and she had to really talk loud for us to be able to hear it out here.
>
> So, I just want to say, I know that's not true.
>
> * * *
>
> Now he says here, 'I was willing to take the plea agreement that I was offered, which was ten plus two to twenty, and the charge was going to reduce from first degree to second degree murder. But my counsel told me that she can and will beat it, which she is not allowed to do.'
>
> Now, I happen to know that counsel is very -- we could hear you shouting, talking to him back there.
>
> So, I'm just saying, you know, I get really concerned when I see these kinds of lies....
>
> ***
>
> Now, you know, I'm just hearing lie after lie.

26

*Id.* at 3-4, 6-7, 13.  Thus, contrary to Petitioner's claim, the record indicates that trial counsel did not promise Petitioner that she could win his case and that she was trying to convince Petitioner to accept the prosecutor's plea offer, not to reject it.

Petitioner offers no evidence, other than his own assertions, for his claim that trial counsel advised him to reject the plea offer.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).  Moreover, the decision about whether to accept or reject a plea offer ultimately rests with the defendant, not trial counsel.  *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).  Petitioner fails to show that trial counsel's performance with respect to the plea offer was deficient.  He thus fails to establish that trial counsel was ineffective under the *Strickland* standard.

Lastly, as discussed, Petitioner fails to establish that a fundamental miscarriage of justice occurred because he fails to present new reliable evidence that he is actually, factually innocent of the crime.  *Bousley*, 523 U.S. at 624; *Schlup*, 513 U.S. at 324-27.  This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

## V.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the Petition for a Writ of Habeas Corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A federal court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a district court denies relief on procedural grounds, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly, the Court **DENIES** a COA. The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.


S/Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated: November 6, 2017